ACCEPTED
13-15-00037-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/17/2015 4:10:34 PM
Dorian E. Ramirez
CLERK

13-15-00037-CR

COURT OF APPEALS
IN THE THIRTEENTH JUDICIAL DISTRICT COURT

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

9/17/2015 4:10:34 PM

DORIAN E. RAMIREZ
Clerk

| | | |
|---|---|---|
| ALBERTO ALBA VILLARREAL, | § | |
| APPELLANT, | § | APPEAL FROM THE 445TH |
| | § | JUDICIAL DISTRICT COURT |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS, | § | CAUSE NO. 2013-DCR-3189-I |
| APPELLEE. | § | |

# BRIEF FOR APPELLANT, ALBERTO ALBA VILLAREAL

GERALD H. GOLDSTEIN *
CYNTHIA E. ORR
GOLDSTEIN, GOLDSTEIN & HILLEY
310 S. ST. MARY'S ST., STE. 2900
SAN ANTONIO, TEXAS 78205

EDWARD STAPLETON
STAPLETON & STAPLETON
2401 Wild Flower, Suite C
Brownsville, Texas 78526

*LEAD COUNSEL

ORAL ARGUMENT REQUESTED

## PARTIES TO THE CASE

Representing the State at Trial:

Julie Allen
Assistant District Attorney
Bar No. 24055096
946 E. Harrison St.
Brownsville, Texas  78520
956-544-0849


Representing the Appellant at Trial:
Edward Stapleton
Bar No. 19058400
Attorney at Law
2401 Wild Flower, Suite C
Brownsville, Texas  78525
956-544-0882


Ricardo Adobbati
Bar No. 00790208
Attorney at Law
134 E. Price Rd.
Brownsville, Texas  78520
956-544-6882

Carlos Masso
Bar No. 24013112
Attorney at Law
1000 East Madison
Brownsville, Texas 78520
956-504-0469

Representing the Appellant at the Motion for New Trial:

Edward Stapleton
Bar No. 19058400
Attorney at Law

2401 Wild Flower, Suite C
Brownsville, Texas 78526
956-544-0882


Representing the State on Appeal:

Luis V. Saenz
District Attorney
Bar No. 17514880
Cameron County District Attorney's Office
946 E. Harrison St.
Brownsville, Texas 78520
956-544-0849


Representing the Appellant on Appeal:

Gerald H. Goldstein (Lead Counsel)
Bar No. 08101000
Cynthia E. Orr
Bar No. 15313350
Goldstein, Goldstein & Hilley
310 S. St. Mary's St., Ste. 2900
San Antonio, Texas 78205
E-mail: ggandh@aol.com
E-mail: whitecollarlaw@gmail.com
210-226-1463
210-226-8367 facsimile


Edward Stapleton
Bar No. 19058400
Attorney at Law
2401 Wild Flower, Suite C
Brownsville, TX
(956) 544-0882


**The Honorable Frederick Hinojosa presided at the trial of this case.**

# TABLE OF CONTENTS

Parties to the Case .................................................................................................. ii

Table of Contents .....................................................................................................iv

Table of Authorities .............................................................................................. vii

Request for Oral Argument..................................................................................... xii

Restatement of the Issues...................................................................................... xiii

Statement of the Case.............................................................................................xiv

Statement of the Issues............................................................................................iv

Statement of Facts .....................................................................................................1

Summary of the Argument.......................................................................................11

Point of Error Number One: The convictions are void because they were obtained through the prosecution of the case by the Texas Securities Board; a violation of the separation of powers. 5R28, 10R4-5. Article II, Texas Constitution ...................................................................................................................................12

Point of Error Number Two: Section 581-29(C)(3) of Vernon's Civil Statutes is unconstitutional on its face because it assigns criminal penalties to ordinary negligence. Fifth, Sixth and Fourteenth Amendments, United States Constitution. 5R49. ......................................................................................................................17

Point of Error Number Three: Section 581-29(C)(1) of Vernon's Civil Statutes is unconstitutional on its face because it assigns criminal penalties to ordinary negligence. Fifth, Sixth and Fourteenth Amendments, United States Constitution. 5R49 .......................................................................................................................17

Point of Error Number Four: The court erred by denying Appellant's motion to dismiss count one (securities laws) because the statute of limitations had expired on this offense. 1CR7, 6R109, 3CR674, 6R120, 3CR801, 11R 36. ......................24

Point of Error Number Five: The court erred by denying Appellant's motion to dismiss and count two (theft) because the statute of limitations had expired on this offense. 1CR7, 6RR109, 3CR 674, 6R120, 3CR801, 11R 36.
.................................................................................................................................24

Point of Error Number Six: The Evidence is Insufficient to Sustain a Conviction on Count One, *passim*. 1CR7. *Jackson v. Virginia*, 443 U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979) ........................................................................................32

Point of Error Number Seven: The Evidence is Insufficient to Sustain a Conviction on Count Two, *passim. Jackson v. Virginia*, 443 U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979) ........................................................................................32

Point of error number eight: The state failed to plead and disprove the exception to the sale of a security contained in the criminal provision of the securities act, so count one failed to state an offense.1CR5-7, 1CR150-154, 5R46, 7R15. *State v. Laird*, 208 S.W.3d 667 (Tex. App.—Fort Worth 2006, no. pet.) ..........................43

Point of Error Number Nine: The Denial of Villarreal's Request for the Inclusion of the Statutory Exemption in the Jury Instruction Constitutes Reversible Error 13R21 *Dean v. State,* 443 S.W.2d 173 (Tex. Crim. App. 1968). ...........................45

Point of Error Number Ten: A Material Variance Exists Between the Allegations in Count two of the Indictment and the Proof Presented at Trial. *Passim Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001) ...............................................46

Point of Error Number Eleven: A Material Variance Exists Between the Allegations in Count one of the Indictment and the Proof Presented at Trial. *Passim Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001) .................46

Point of Error Number Twelve:  The Prosecution Became an Interested Party when it Gave Advice to the Victim in his Civil Suit, *passim*. 4R15. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).
.................................................................................................................................49

Point of Error Number Thirteen: The court Erred in Permitting the Texas Securities Board to Act as Both Prosecutors and Witnesses in this Case. 10R323. *In Re Guerra*, 235 S.W.3d 392, 431.
.................................................................................................................................52

Point of Error Number Fourteen: The Court should have stricken Garrido's testimony and granted a mistrial when the state failed to produce his videotaped statement that had been in their possession. 2R6, 4R49. *Jenkins v. State*, 912 S.W.2d 793 (Tex. Crim. App. 1993)
....................................................................................................................53

Points of Error Fifteen through Eighteen:

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the due process clause of the 5th and 14th amendments to the United States Constitution. 11 R1 75.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the due course of law provisions of article 1, sections 13 and 19 to the Texas Constitution. 11 R175.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the fair trial clause of the 6th amendment to the United States Constitution. 11 R1 75.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the fair trial clause of article 1 section 10 to the Texas Constitution. 11 R1 75.
....................................................................................................................55

Prayer ........................................................................................................61

Certificate of Compliance .........................................................................62

Certificate of Service ................................................................................63

# TABLE OF AUTHORITIES

**CASES:**

*Barnes v. State*, 824 S.W.2d 560 (Tex. Crim. App. 1991) ................................28,30

*Bartlett v. State*, 270 S.W.3d 147 (Tex. Crim. App. 2008) .....................................59

*Bridwell v. State*, 804 S.W.2d 900 (Tex. Crim. App. 1991).....................18,19,22,52

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ......................................39

*Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989)..........
................................................................................................................................60

*Clark v. State,* 878 S.W. 2d 224 (Tex. App. -- Dallas 1994, no pet.)......................58

*Cooper v. State*, 527 S.W.2d 563 (Tex. Crim. App. 1975).....................................24

*Cochran v. United States*, 157 U.S. 286, 15 S.Ct. 628, 39 L.Ed.2d 704 (1895) .....21

*Cupit v. State*, 122 S.W.3d 243 (Tex. App. – Houston [14th Dist.] 2003 pet. ref'd)
................................................................................................................................28

*Dean v. State*, 433 S.W.2d 173 (Tex. Crim. App. 1968)...............39,40,41,42,44,45

*Digges v. State,* 2012 Tex. App. Lexis 5195 (Tex. App.-Dallas 2012, no pet.) ......25

*Elonis v. United States*, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015) ........................20,21

*Ex parte Giles*, 502 S.W.2d 774 (Tex. Crim. App. 1973) .......................................12

*Ganger v. Peyton*, 379 F.2d 709 (4th Cir. 1967) .....................................................51

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001)................................46,47

*Graves v. State*, 795 S.W.2d 185 (Tex. Crim. App. 1990).....................................27

*Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012) ...........................................39

*Hartsfield v. State*, 200 S.W.3d 813 (Tex. App. – Texarkana 2006).......................14

*Higginbotham v. State,* 356 S.W.3d 548 (Tex. App,. –Texarkana 2011, pet. ref'd)..30

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) .........................................39

*In re Guerra*, 235 S.W.3d 392 (Tex. App.-Corpus Christi 2007, reh'g den.) .........51

*Jackson v. State*, 646 S.W.2d 225 (Tex. Crim. App. 1983)....................................32

*Jackson v. Virginia*, 443 U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979)..................38

*Jenkins v. State*, 912 S.W.2d 793 (Tex. Crim. App. 1993)...........................52,53,59

*Johnson v. State,* 452 S.W.3d 398 (Tex. App. -- Amarillo 2014, pet. ref'd) ..........59

*Jones v. Richards*, 776 F.2d 1244 (4th Cir. 1985) ..................................................50

*Marshall v. Jerrico, Inc.*, 446 U.S. 238, 100 S.Ct. 1610,
64 L.Ed.2d 182 (1980) ......................................................................................21,50

*McGinnis v. State,* 541 S.W.2d 431 (Tex. App.-San Antonio 1976, no pet.)..............
........................................................................................................................58

*Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed.2d 288 (1952) ..21

*Northern Indiana Public Service Co. v. Izaac Walton League*, 423 U.S. 12, 96 S.Ct. 172, 46 L.Ed. 2d 156 (1975) ........................................................................19

*Provident Life & Assc. Ins. Co. v. Knot*, 128 S.W.3d 211, 215 (Tex. 2003) ..........24

*Prudential Ins. Co. of Amer. v. Jefferson Assoc. Ltd.,*
896 S.W.2d 156 (Tex. 1995) .....................................................…..37,38

*Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975).........3,21

*Selman v. State*, 807 S.W.2d 310 (Tex. Crim. App. 1991) ....................................59

*Stanfield v. State*, 213 S.W.2d 837 (Tex. Crim. 1948) ..............................................33

*Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793, 128 L.Ed.2d 608 (1994)..20

*State v. PUC of Texas*, 344 S.W.3d 349 (Tex. 2001) ..............................................26

*State v. Rosenbaum*, 852 S.W.3d 525 (Tex. Crim. App. 1993)..............................13

*State v. Weaver*, 982 S.W.2d 892 (Tex. Crim. App. 1998) ....................................27

*Sullivan v. United States*, 508 U.S. 275, 113 S. Ct. 2078,
124 L.Ed. 2d 182 (1993) ........................................................................................21

*Taylor v. State*, 450 S.W.3d 528 (Tex. Crim. App. 2014)........................25,29,30,36

*Thomas v. State*, 65 S.W.3d 38 (Tex. Crim. App. 2001)........................................26

*Tita v. State*, 267 S.W.3d 33 (Tex. Crim. App. 2008) ............................................28

*TSC Indus. v. Northway*, 426 U.S. 438, 96  S.Ct. 2126, 48 L.Ed.2d 757 (1976) ....19

*United States v. Baker*, 17 F.3d 94 (5th Cir. 1994) ..........................................46,47

*United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) .....20

*United States v. Sprick*, 233 F.3d 845 (5th Cir. 2000)........................................46,47

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107  S.Ct. 2124,
95 L.Ed.2d 740 (1987) .............................................................................................50

**Constitutions, Statutes and Rules:**

**Constitutions:**

United States Constitution, Fifth Amendment................................................8,17,21

United States Constitution, Sixth Amendment............................................17,21,22

United States Constitution, Fourteenth Amendment ............................................17

Texas Constitution, Article I, § 10................................................................52

Texas Constitution, Article I, § 19................................................................54

Texas Constitution, Article II, § 1 ................................................................12

Texas Constitution, Article III ......................................................................12

Texas Constitution, Article IV ......................................................................12

Texas Constitution, Article V .......................................................................12

**Statutes**

Texas Finance Code, Section 151.501 ...........................................................31

Texas Penal Code, Section 31.01(4)...........................................................29,38

Texas Penal Code, Section 31.03.............................................................2,27,29

Texas Penal Code, Section 31.03(E)(7)........................................................2,29

Texas Penal Code, Section 31.09...................................................................27

Vernon's Annotated Texas Civil Statutes, Article 581-2 (B)..................................12

Vernon's Annotated Texas Civil Statutes, Article 581-2 (D)..................................12

Vernon's Annotated Texas Civil Statutes, Article 581-2 (G)..................................12

Vernon's Annotated Texas Civil Statutes, Article 581-29(C)(3)……..2,11,16,46,47

Vernon's Annotated Texas Civil Statutes, Article 581-29-1..................................25

Vernon's Annotated Texas Civil Statutes, Article 581-3 ..................................13,39

Vernon's Annotated Texas Civil Statutes, Article 581-37 ....................................39

Vernon's Annotated Texas Civil Statutes, Article 581-4(A)........................26,42,44

Vernon's Annotated Texas Civil Statutes, Article 581-4(E)....................................26

Vernon's Annotated Texas Civil Statutes, Article 581-5 (C)............................18,21

**Rules:**

Texas Rules of Appellate Procedure, Rule 39.1 .........................................................1

Texas Rules of Evidence, Rule 615(e).............................................................11,53

Texas Code of Criminal Procedure, Article 12.01 (4)(A) ...................................... 27

**OTHER:**

1 C. Torcia, Wharton's Criminal Law § 27, pp. 171-72 (15th ed. 1993)................21

Black's Law Dictionary (10th ed. 2014)..............................................................33

ABA Standards for Criminal Justice for the Prosecution Function (2015).............50

**13-15-00037-CR**

**COURT OF APPEALS**
**IN THE THIRTEENTH JUDICIAL DISTRICT COURT**

| | | |
|---|---|---|
| ALBERTO ALBA VILLARREAL, | § | |
| APPELLANT, | § | APPEAL FROM THE 445TH |
| | § | JUDICIAL DISTRICT COURT |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS, | § | CAUSE NO. 2013-DCR-2189-I |
| APPELLEE. | § | |

## BRIEF FOR APPELLANT, ALBERTO ALBA VILLARREAL

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS IN THE THIRTEENTH JUDICIAL DISTRICT, CORPUS CHRISTI, TEXAS:

Appellant, ALBERTO ALBA VILLARREAL, by and through undersigned counsel, respectfully submits this, his brief, and seeks that his conviction be reversed and the judgment of the trial Court rendered, or in the alternative, that he be granted a new trial.

### REQUEST FOR ORAL ARGUMENT

Appellant, ALBERTO ALBA VILLARREAL, requests oral argument in this case pursuant to Rule 39.1 of the Texas Rules of Appellate Procedure. Since this case presents *res nova* issues and concerns the fact bound inquiries regarding the sufficiency of the evidence and expiration of the statute of limitations, argument will assist this Court in deciding the case.

# RESTATEMENT OF THE ISSUES

Point of Error Number One: The convictions are void because they were obtained through the prosecution of the case by the Texas Securities Board; a violation of the separation of powers. 5R28, 10R4-5. Article II, Texas Constitution

Point of Error Number Two: Section 581-29(C)(3) of Vernon's Civil Statutes is unconstitutional on its face because it assigns criminal penalties to ordinary negligence. Fifth, Sixth and Fourteenth Amendments, United States Constitution. 5R49.

Point of Error Number Three: Section 581-29(C)(1) of Vernon's Civil Statutes is unconstitutional on its face because it assigns criminal penalties to ordinary negligence. Fifth, Sixth and Fourteenth Amendments, United States Constitution. 5R49

Point of Error Number Four: The court erred by denying Appellant's motion to dismiss count one (securities laws) because the statute of limitations had expired on this offense. 1CR7, 6R109, 3CR674, 6R120, 3CR801, 11R 36.

Point of Error Number Five: The court erred by denying Appellant's motion to dismiss and count two (theft) because the statute of limitations had expired on this offense. 1CR7, 6RR109, 3CR 674, 6R120, 3CR801, 11R 36.

Point of Error Number Six: The Evidence is Insufficient to Sustain a Conviction on Count One, *passim*. 1CR7. *Jackson v. Virginia*, 443 U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979)

Point of Error Number Seven: The Evidence is Insufficient to Sustain a Conviction on Count Two, *passim. Jackson v. Virginia*, 443 U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979)

Point of error number eight: The state failed to plead and disprove the exception to the sale of a security contained in the criminal provision of the securities act, so count one failed to state an offense.1CR5-7, 1CR150-154, 5R46, 7R15. *State v. Laird*, 208 S.W.3d 667 (Tex. App.—Fort Worth 2006, no. pet.)

Point of Error Number Nine: The Denial of Villarreal's Request for the Inclusion of the Statutory Exemption in the Jury Instruction Constitutes Reversible Error 13R21 *Dean v. State,* 443 S.W.2d 173 (Tex. Crim. App. 1968).

Point of Error Number Ten: A Material Variance Exists Between the Allegations in Count two of the Indictment and the Proof Presented at Trial. *Passim Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)

Point of Error Number Eleven: A Material Variance Exists Between the Allegations in Count one of the Indictment and the Proof Presented at Trial. *Passim Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)

Point of Error Number Twelve:  The Prosecution Became an Interested Party when it Gave Advice to the Victim in his Civil Suit, *passim.* 4R15. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

Point of Error Number Thirteen: The court Erred in Permitting the Texas Securities Board to Act as Both Prosecutors and Witnesses in this Case. 10R323. *In Re Guerra*, 235 S.W.3d 392, 431.

Point of Error Number Fourteen: The Court should have stricken Garrido's testimony and granted a mistrial when the state failed to produce his videotaped statement that had been in their possession. 2R6, 4R49. *Jenkins v. State*, 912 S.W.2d 793 (Tex. Crim. App. 1993)

Points of Error Fifteen through Eighteen:

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the due process clause of the 5th and 14th amendments to the United States Constitution. 11 R1 75.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the due course of law provisions of article 1, sections 13 and 19 to the Texas

Constitution. 11 R175.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the fair trial clause of the 6th amendment to the United States Constitution. 11 R1 75.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the fair trial clause of article 1 section 10 to the Texas Constitution. 11 R1 75.

## STATEMENT OF THE CASE

Appellant Alberto Alba Villarreal was charged on November 6, 2013 with one count of "False Statement Securities" greater than $10,000 but fewer than $100,000 in violation of "§ 581-29(C)(3)" and one count of "Theft of Property" greater than $200,000 in violation of "§ 31.03(e)(7)" [ostensibly occurring on or about November 7, 2008]. The indictment charges that the offense conduct took place on November 7, 2008 though the exhibit relied on by the State to substantiate the charged conduct is dated November 3, 2008. This exhibit is a contract with Nafta Holdings, LLC for membership shares of Nafta Holdings LLC. However, by November 6, 2013, the statute of limitations had expired for offenses occurring on or before November 6, 2008. The jury found Appellant guilty of both counts and sentenced him to ten years for

count one and five years for count two to run concurrently. His ten-year sentence of confinement was suspended and the defendant was placed on community supervision for ten years on January 20, 2015, and he was granted bond pending appeal.

## STATEMENT OF FACTS

Appellant came from humble beginnings, growing up in Matamoros, Tamaulipas, Mexico, and moving to Brownsville, Texas in 1978. 12R39. Insurance was the Villarreal family business, as Appellant's uncle, father, and two brothers all owned or worked for insurance businesses. 12 RR 40. Appellant entered the insurance field by working for International Insurance Agency, a company run by Appellant's brother Ramon, where he worked on marketing and business development in the South Texas region. 12R19. Appellant met with David Rogers and Raul Villanueva, loan officers at First National Bank, and they gave him a $2.3 million loan in a CD for the purpose of starting an insurance company. 10R110. The collateral was some of Appellant's real estate, which the bank appraised at $4 million. 7R85-87.

Enrique Garrido was a wealthy Mexican national and sophisticated businessman. 11R108. Garrido knew Appellant from having met with him before and by conducting insurance business with Appellant's brother, Alejandro. 11R80. Garrido and Appellant had a good relationship and were friends. 10R124.

1

Appellant was even a guest of honor at Garrido's daughter's wedding. 10R124. Appellant and Garrido discussed the fact that he would go into business with both Appellant and Alejandro's insurance companies. 11R91. Garrido wanted to diversify and admired Appellant's and Alejandro's businesses. 11R91. Garrido was aware that Appellant used his property as collateral for the loan to start the insurance company and that the CD was encumbered. 9R55, 12R49. Attorney, William Pope, prepared their contract. 12R199. And all understood that the agreement was not a sale of securities but, instead, a contract forming an LLC. 12R199. Both Appellant and Garrido signed the contract on November 3, 2008 obligating Garrido to pay $2 million in two payments. 3CR714.

The contract gives Appellant, as Manager, control over "entering into, making, and performing contracts, agreements, and other undertakings binding the Company that may be necessary, appropriate, or advisable in furtherance of the purposes of the Company and making all decisions and waivers thereunder." 3CR691. Garrido understood that Appellant had incurred expenses to get the insurance company off the ground and that Appellant would be reimbursed for those efforts. 12R51, 53. He knew that all of Appellant's money was tied up and that Appellant had to live using investment funds. 9R67-68. Garrido also knew that the money invested by Appellant was encumbered by the bank and that Appellant needed money in order to form Nafta Holdings, LLC. 9R55-56.

2

Garrido also expressly agreed in writing that Appellant had the power to pay debts and obligations of the company as he saw fit. 9 RR 66-67, 10R96, Dx10, 15R47. Under its express terms, Villarreal could:

> "to do all such other things within the power of a shareholder of the Corporation, including giving consents and waiving notices, if exercising such power, in his judgement, is necessary or advantageous for the interests of the Nominor [Garrido]."

Garrido and Appellant went to Wells Fargo and First National Banks, and deposited $1 million of Garrido's money into them. 12R98. Garrido maintained signatory authority over both accounts and his personal financial advisor worked at First National Bank, Mr. Esteve. 3CR282-283, 10R96-97.

Garrido was obligated to invest $2 million, but his initial payment was $1 million. 10R118. The first $650,000 was deposited on November 6, 2008 and the rest, $350,000, was deposited November 7, 2008. 12R94, 201; 3 CR 422, 423. When Garrido's $1 million was deposited, 24% of Nafta Holdings, LLC vested with Garrido. 10R122. The agreement called for an additional 24% to be transferred to Garrido contingent on the November 27th payment of a further $1 million he was obligated to make under the contract. 10R96. But Garrido breached the contract by failing to make his next payment. 9R57-58 And he attempted to renegotiate the contract, through his son-in-law, Alexander Gerard (an analyst in investment banking) to take management control of Nafta Holdings, LLC. But this attempt did not reach fruition. 9R72-77, 80.

3

Garrido, being in possession of signatory rights, could have withdrawn his money if he had that desire. 9R61, 63. Ms. Lujan, with the Texas Securities Board, testified and confirmed that Garrido was a signatory on both Nafta Holdings, LLC accounts. 9R98, 179. She testified that she simply traced the flow of the money and could not say that any of the payments of the Nafta Holdings, LLC accounts were either unlawful or made without Mr. Garrido's knowledge or understanding. 9R162-163 She further testified that the first $1million was transferred out of the Nafta Holdings, LLC accounts by June 2009. 9R166. Thereafter, Garrido deposited his tardy second $1 million on July 1, 2009. 12 RR 182; 3 CR 518–521. He also had signatory authority over this account. 3CR518.

Appellant then used the money to make efforts to get the insurance company off of the ground. 12R204. Some of the payments made by Appellant were to keep from defaulting on the $2 million loan. 9R156. Entities or persons associated with Garrido also received payments from the accounts of Nafta Holdings, LLC. 9R157-158. Ms. Lujan testified that she did not know who Mr. Massu or Mr. Galvan were and could not say that a payment to them was illegitimate. 9R162-163. Ms. Lujan also could not testify that Villarreal knew what Nafta General Agency or Jose Angel Castillo Peraza did with the monies transferred to their accounts. 9R164-165. Garrido did not testify these payments were illegitmate. Nafta General was an agency with which Nafta Holdings, LLC was going to

4

contract to do business. 12R63-64. Ms. Lujan testified that she did not know if Garrido received funds from Appellant or if Garrido had an interest in Vizo, Inc or other entities receiving investment monies. 9R152.

Other use of the funds in the Nafta Holdings, LLC accounts included Garrido's use of Appellant's driver to travel to Mexico for his medicine, to go to the airport, and to ferry monies to a woman friend at Burlington. Also, Garrido admitted to going out with the woman, taking her on vacations, and having Appellant or the driver take her to the airport for Garrido. 10R108-109. Garrido frequently admitted asking Appellant to deliver those types of gifts to people for him. 10R108-109. After making these admissions, Garrido angrily accused counsel for Appellant of being gay and not liking women. 10R109-110. The funds used for these activities also appeared to come from Nafta Holdings, LLC. The driver, alone, received about $156,751.25. 10R113.

The Government then sponsored and admitted Appellant's testimony at a prior proceeding to the effect that Garrido was aware of all the expenditures made from investment money. 10R116-124.

The Texas Department of Insurance requires treasury bills, so Appellant went to First National Bank Financial Management to request that they transfer the money deposited with them into treasury bills. 12R82. First National Bank gave Appellant notice that they would not release the $2 million in the CD Appellant

opened with them for the purpose of starting Nafta Holdings, LLC. 12R178. As stated above, Garrido admitted he knew this. 9R55 Appellant then told Garrido of First National Bank's refusal to release the funds and Garrido expressed his support for Appellant, encouraging him to sue First National. 12R182.

Appellant sued First National Bank and lost. 12R178. Garrido hired the lawyer married to the bank's appellate lawyer to file a complaint against Villarreal with the Texas Securities Board December 12, 2011. DX2, 15R38. 10R104-105. Garrido's personal financial advisor also worked at First National Bank. 10R98-99.

Garrido and Appellant's relationship continued for four years after Garrido made his initial investment. 12R186. And Mr. Garrido did not claim that anything was amiss until several years later. Appellant was indicted on November 6, 2013 for False Statement Securities and Theft of Property. 1CR 5-7.

When asked about his own investments and use of funds, Garrido asked for a lawyer to help him answer the questions. 9R81. After being advised of his Fifth Amendment rights, he continued answering questions; but in an unsatisfactory manner. He often argued with Appellant's counsel or refused to answer.

Initially, Mr. Garrido was going to appear as a defense witness. 1CR22. He was represented by Mr. Paul Fourt in a civil suit against Mr. Villarreal. Counsel announced to the court that they felt that if the civil case resolved, that the criminal

6

case would not need to go forward. 2R10-11, 3R7. Angela Cole, An Assistant Director with the Texas State Securities Board, began communicating with Garrido as a complaining witness. 1CR36.

Thereafter, the state attempted to take the deposition of Garrido. 1 CR 44-46, 4R5-6. Mr. Fourt appeared in court indicating he represented Garrido in his civil case. 3R7-8, 4R6. He stated that his client did not want to proceed with prosecution, but that when he met with prosecutors at the district attorney's office in an attempt to prepare an affidavit of non-prosecution based on his settlement of the civil case, the district attorney rejected that. 4R14. Mr. Fourt also objected to the fact that the district attorney met with his client out of his presence based on their representation they would not discuss the civil case with his client. However, they did discuss the civil case with his client and even advised him on the merits of him accepting the settlement in that civil case. 4R15, 3R3. After that Mr. Fourt lost communications with his client and was given orders by Garrido through an email to nonsuit the civil case. 5R39. Garrido represented that he was scared into believing that any civil settlement would never be paid and his only venue to resolve this matter was a criminal case. 5R39. But, Garrido's lawyer, Mr. Fourt, never gave him that advice. That advice must have come from his meeting with Ms. Allen and Miss Cole, the assistant district attorney and the Securities Board lawyer. 5R40.

These prosecutors stepped over the line from performing their function as prosecutors and became advocates and legal representatives, of Garrido. Id. Counsel objected that this conflict disqualified the lawyers from pursuing the prosecution of the case. Id. The state denied that it provided Garrido civil advice. However, it never denied speaking to him about his civil case. 5R41. But defense counsel were in possession of texts and emails from Garrido contradicting the state's representation that it gave him no legal advice. 5R43. The state's only objection to that representation was that Mr. Fourt was no longer Mr. Garrido's attorney. 5R43. This is strange since Mr. Garrido brought Mr. Fourt to represent him when he subsequently asked for counsel during his testimony. 10R7. Appellant noted that the state would not be aware of counsel's status had it not been discussing Garrido's suit and its disposition with him. 5R44.

> "Your honor let me just add one thing. How she knows or if she knows or how she found out that Mr. Fourt is no longer the attorney I don't know. There's been no filings made of any kind or any representation other than the phone call that I received from. … Mr. Fourt no longer the attorney. I was advised by him that he got an email that he was told to nonsuit the lawsuit. However, when that discussion took place prior to the nonsuit, and it's not a coincidence that this nonsuit issue came up after we were already seeking his deposition in the civil case, which was actually I think set for today we would've been taking his deposition. So obviously they're intertwined. Somebody advised him that he could not get out of the civil case deposition unless you were to nonsuit the lawsuit, and I'm certain that Mr. Fourt was not doing that because he was actually prosecuting the civil case to try and get a resolution on the matter." 5R44.

## SUMMARY OF THE ARGUMENT

8

The Texas Securities Board was without authority to prosecute this case and doing so violates separation of powers doctrine. The securities law applied by the trial court below employed an unconstitutional civil standard of proof, which does not require criminal wrongdoing. Moreover, prosecutors violated their ethical obligation to provide a disinterested prosecution by providing to their complaining witness and testifying before the jury. Additionally, the Court commented on the weight of the evidence, in effect, instructing a verdict of guilty.

The evidence presented was insufficient to support the conviction, failed to prove the state's complaining witness had any material representation made, in that at all times the sole complaining witness and alleged victim had access to his own funds. He was also aware of all Appellant's material financial arrangements and at the time of the signing of the contract in 2008, any alleged misrepresentation and/or theft had already occurred. Furthermore, the State did not plead and prove the tolling of the applicable statute of limitations. Accordingly, the convictions are void.

The indictment fails, to give notice, and so does not allege an offense against the laws of Texas, and several variances exist between the allegations and the proof; including theft of U.S. Currency, versus checks; and a violation of 581-29(C)(3) misrepresentation versus fraud 581-29(C)(1). Lastly, the state failed to produce the video statement of its sole material witness and alleged victim, which Rule 615 mandates that the trial court strikes that witness' testimony. A mandatory remedy the trial court failed to provide. Therefore, the court erred in not striking his testimony and declaring a mistrial as required by the Texas Rules of Evidence.

## ARGUMENT

**Point of Error Number One: The convictions are void because they were obtained through the prosecution of the case by the Texas Securities Board; a**

**violation of the separation of powers. 5R28, 10R4-5. Article II, Texas Constitution**

The Texas Constitution provides each branch its respective powers. Too much power concentrated within the hands of one person or class will lead to tyranny; with no other person or class to keep the power in check. Here, the prosecution by the Securities Board steps squarely outside these fundamental constitutional bounds by charging and prosecuting a criminal case. The authority of the Texas Securities Board, in the executive branch, is expressly limited to investigation functions.[1]

The Texas Constitution gives powers that are mutually exclusive to each branch. *See* TEX. CONST. art. II, § 1 ("Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.") So, each branch exercises only the power "granted to one department of government." *See Ex parte Giles*, 502 S.W.2d 774, 780 (Tex. Crim. App. 1973). Therefore, one department of the government attempting to "to interfere with the powers of another is null and void." *See Ex parte Giles*, 502 S.W.2d 774, 780 (Tex. Crim. App. 1973).

---

[1] The stated constitutional and statutory authority of the Texas Attorney General's Office to engage in prosecutions is limited to that office as is set out below.

The Legislative, Executive and Judicial departments are each governed by Article III, IV and V, respectively. *See* TEX. CONST. art. III, IV, V. Within Article V, county and district attorneys fall under the umbrella of the Judicial Department. *See* TEX. CONST. art. V, § 21. The Governor appoints the board members and designates one of those members to be the presiding officer. *See Texas Civil Statutes* Art. 581-2(B) & (D). The Commissioner is appointed by a majority of the Securities Board. *See Texas Civil Statutes* Art. 581-2(G). So, the Judicial department of Texas has no role in the creation nor operation of the Securities Board.

Moreover, the job of the Securities Board is to investigate any potential criminal activity, not to prosecute investigated individuals. *See* Texas Civil Statutes Art. 581-3. Once the Commissioner investigates, that person "shall at once lay before the District or County Attorney of the proper county any evidence which shall come to his knowledge of criminality…" *See* Texas Civil Statutes Art. 581-3.

Once the evidence is brought to the district or county attorney, the district or county attorney makes the decision to prosecute. The Commissioner cannot make the decision to prosecute. *Id.* If the district or county attorney decides not to prosecute, the Commissioner must take it to the Attorney General. *Id.* The statute does not give the Commissioner the substituted power to prosecute, only the

11

attorney general. The prosecution by the Securities Board is a violation of the Separation of Powers that the Texas Constitution strictly prohibits.

A "'special prosecutor' with the consent of the district attorney, assists the district attorney in the investigation and prosecution of a particular case, but the district attorney is responsible for the prosecution, control and management of the case." *See State v. Rosenbaum,* 852 S.W.2d 525, 529 (Tex. Crim. App.1993). So the "special prosecutor" may not take control or lead the prosecution. *Id.* A "special prosecutor" takes control of a case by making "crucial prosecutorial decisions, including, but not limited to, decisions regarding whether to prosecute, what investigative powers to utilize, and what plea- bargains to strike." *See Hartsfield v. State*, 200 S.W.3d 813, 817 (Tex. App. —Texarkana 2006, pet ref'd).

Here, an attorney from the Securities Board ("TSB"), Ms. Good, is leading the prosecution. The state represented that attorneys from the Security Board would participate in the case. 3R6. Counsel objected to this suggesting that the law did not support them appearing as special prosecutors. 5R28. The securities lawyer also prepared the wording of the indictment. 2R10. A lawyer for the Texas Securities Board was the sole witness who testified before the grand jury. 4R8. The investigator who worked on the case was from the Texas Securities Board and the presentation to the grand jury was based on her investigation. 2R7. The assistant district attorney advised the court that the case was their, the Securities Board's,

case. She explained that it was a very complicated and specialized case that was the type that the Securities Board lawyers tried. She referred to the Securities Board lawyers as "lead prosecutor in this case." 5R41. The state also designated Texas Securities Board members as expert witnesses in the case; Joe Rotunda, the Director of Enforcement, and Travis Iles, the Assistant Director of Enforcement; both lawyers. 1CR13. Thereafter, Ms. Angela Cole appeared as a witness in an affidavit seeking the deposition of Mr. Garrido. 1CR49. And testified at the pretrial hearing. 4R15.

Discussing the "special prosecutor" issue, at the beginning of voir dire, Ms. Allen introduced Ms. Cole and Ms. Good as prosecutors in the case. 6R4–5. Counsel for Appellant immediately objected that he was not waiving his right to contest the legitimacy of the prosecution by lawyers from the Securities Board, 6R12-13, and that he wanted to address the attempt to use securities lawyers as a special prosecutor. 5R38. He requested that the state be required to file a motion to include a special prosecutor and provide "the basis" for having such a prosecutor. 5R44-45. The court noted his objection to the special prosecutor, but allow the representation by the State Securities Board lawyers. 5R44. Also, Appellant raised the separation of powers issue saying; "The issue is basically separation and balance of powers between the police authority and prosecution, and this case develops why that is a problem. This is actually an SEC case where they were

engaged in some of the similar activities. The SEC office seems to cultivate their own witnesses and then they're talking about the problems with what [that] creates, and you have the same person or at least in the same firm doing probable cause, doing prosecutions. The prosecutors begin to act like police and police begin to act like the prosecutors." 10R4-5.

Good, counsel with the Securities Board conducted voir dire in this case. 6R 28. She informed the jury that it was she and the Texas Securities Board that brought the indictment:

> "It is actually the one found in a separate section called the Texas Securities Act, and the Texas Securities Act created the agency that I and one of my colleagues work for. …And then lastly the Texas Securities Act provides methods of enforcement by taking actions against individuals and companies who violate the Act *including criminal actions. That's why we're here today.*" 6R28-29 [emphasis added].

Another securities lawyer, Mr. Rotunda testified that he reviewed the investigation of those working under him and determined whether or not this case merited being taken to a grand jury. 7R30. Therefore, the Securities Board attorneys, usurping the duties of the District Attorney, were in control of the prosecution, which is an Executive department infringement on the Judicial department's powers. As a consequence, these convictions are void.

**Point of Error Number Two: Section 581-29(C)(3) of Vernon's Civil Statutes is Unconstitutional on its Face Because it Assigns Criminal Penalties to Ordinary Negligence. Fifth, Sixth and Fourteenth Amendments, United States Constitution. 5R49.**

**Point of Error Number Three: Section 581-29(C)(1) of Vernon's Civil Statutes is Unconstitutional on its Face Because it Assigns Criminal Penalties to Ordinary Negligence. Fifth, Sixth and Fourteenth Amendments, United States Constitution. 5R49.**

These points of error will be argued together.

The face of the indictment alleges "false statement securities 58l-29(c)(3)" and in count 1, that Appellant did "then and there sell and offer for sale a membership interest in… a security… and said [Appellant] committed fraud…by… Intentionally failing to disclose…a material fact; and…Intentionally and knowingly misrepresenting …a relevant fact."

Appellant objected to the Securities charge because the Act allows a prosecution at an "extremely low threshold" "on what they have to prove." 5R49.

> "Even though we've got an allegation in here that involves some culpable mental state, it becomes almost a strict liability under that approach." Id.

A criminal statute that does not carry a sufficient mental state violates the Fifth Amendment requirement of proof beyond a reasonable doubt, and the Sixth Amendment requirement of a jury verdict in relation to the Fifth Amendment requirement. These amendments are applicable to the states through the Fourteenth Amendment.

Appellant was convicted of Tex. Civil Code §581-20(C)(3) or (1)[2]. That statute states:

> C. In connection with the sale, offering for sale or delivery of the purchase, offer to purchase, invitation of offers to purchase, invitations of offers to sell, or dealing in any other manner in any security or securities, whether or not the transaction or security is exempt under Section 5 or 6 of this Act, directly or indirectly:
> (1) engage in any fraud or fraudulent practice;
> …(3) knowingly make any untrue statement of a **material** fact or omit to state a **material** fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading

(*emphasis added*).

As evidence of the ambiguous nature of the Securities law, the state appears to have, itself, become confused about the attributes of a prosecution by confusing a misstatement case under subsection (3) with a fraud case under subsection (1). Both are constitutionally infirm, however, so we need not distinguish them here. But, the state must prove what it charges. And since it proved an alleged fraud but charged an alleged misstatement case, the variance is fatal to this conviction as briefed below.

Under both subsections of the Securities law, however, Texas Court of Criminal Appeals uses a reasonable person standard to determine whether or not a fact meets the definition of "material" in the context of the penal section of Texas securities transactions. *Bridwell v. State*, 804 S.W.2d 900, 903-04 (Tex. Crim.

---

[2] See variance point of error below.

16

App. 1991). The Court of Criminal Appeals stated and expanded that sentiment when it said:

> We find that the Supreme Court's definition of 'materiality' provides the most objective standard yet applied to securities transactions, and therefore is appropriately applied to interpret 'material fact' in connection with articles 581-29(C)(1) and 581-4(F). Restated, an omitted fact is material if there is a substantial likelihood that it would have assumed actual significance in the deliberations **of a reasonable investor, in that it would have been viewed by the reasonable investor as significantly altering the total mix of available information used in deciding whether to invest**.

*Id.* at 904. (*emphasis added*).

The Court of Criminal Appeals improperly uses that definition in a penal context; it was derived for civil purposes, in a civil context, where a reasonable person standard suffices. The definition is from *TSC Indus. v. Northway*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). In *TSC Indus.* the Supreme Court determined the definition of material in the context of a civil Securities and Exchange Commission statute that regulates corporation's proxy statements to investors. In determining the most sufficient definition of material, the Court stated that the consideration should be, "the proper balance between the need to insure adequate disclosure and the need to void the adverse consequences of **setting too low a threshold for civil liability**…" *Id.* 449 (*citing to Northern Indiana Public Service Co. v Izaac Walton League*, 423 U.S. 12, 15, 96 S.Ct. 172, 46 L.Ed. 2d 156 (1975))[emphasis added]. Therefore, when the Supreme Court

defined material as stated in the previous paragraph, it intended it to be applied only to civil cases. The Court of Criminal Appeals, however, improperly applies that definition to criminal cases. Again, this is what the Court relied upon in *Bridwell v. State*, 804 S.W.2d 900, 903-04 (Tex. Crim. App. 1991). The trial court and prosecutors, here, relied on the same case.

Additionally, the United States Supreme Court in *Elonis v. United States*, 135 S.Ct. 2001, 2010 (2015), held that a reasonable person standard does not suffice in a penal context, because that criminalizes ordinary negligence. *Elonis* involved how "true threat" should be defined in a penal context. The Court declined to define true threat as how a reasonable person would view the words communicated to them. In regard to that holding, the Court specifically explained its reasoning when it stated, "Elonis's conviction…was premised solely on how his posts would be understood by a reasonable person. Such a 'reasonable person' standard is a familiar feature of civil liability in tort law, but is inconsistent with 'the conventional requirement for criminal conduct—*awareness* of some wrongdoing.'" *Id.* at 2011 (*citing to Staples v. United States*, 511 U.S. 600, 606-07, 114 S.Ct. 1793, 128 L.Ed2.d 608(1994) (*quoting United States v. Dotterweich*, 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943)).

The *Elonis* Court went on to say that a reasonable person standard makes ordinary negligence a crime, and that defies conventional requirements regarding

the necessary mental requisite to commit a crime. *Id.* at 2010. The Court explored this concept when it said:

> Having liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks— 'reduces culpability on the all-important element of the crime to negligence,' *United States v. Jeffries*, 692 F.3d 473, 484 (6th Cir. 2012), (*Sutton, J., dubitante*) and we 'have long been reluctant to infer that a negligence standard was intended in criminal statutes,'

*Elonis* at 2011 (*citing to Rogers v. United States*, 422 U.S. 35, 47 (1975)(Marshall, J., concurring) (*citing Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed.2d 288 (1952)). *See* 1 C. Torcia, Wharton's Criminal Law § 27, pp. 171-72 (15th ed. 1993); *Cochran v. United States*, 157 U.S. 286, 294, 15 S.Ct. 628, 39 L.Ed.2d 704 (1895) ("defendant could face 'liability in a civil action for negligence, but he could only be held criminally for an evil intent actually existing in his mind'").

Additionally, § 581-29(C)(1) (and 581-4(F)) is facially unconstitutional, because it does not require a jury to find every element of the alleged offense beyond a reasonable doubt. Rather, the Court of Criminal Appeals only requires that the jury find, beyond a reasonable doubt, a substantial likelihood that a defendant misrepresented or omitted a material fact. The Court of Criminal Appeals held this when it stated:

> Applying the 'substantial likelihood' test of *TSC Industries, Inc. v. Northway, Inc.* to the facts in the instant case, we find that the evidence was sufficient to support a rational jury finding beyond a

19

reasonable doubt that appellant's failure to disclose his prior fraudulent dealings was fraud within the meaning of articles 581-29(C)(1) and 581-4(F).

*Bridwell v. State*, 804 S.W.2d 900, 904 (Tex. Crim. App. 1991).

The Fifth Amendment requires proof beyond a reasonable doubt, and the Sixth Amendment requires an interrelated jury verdict. *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The Supreme Court specified that "[i]t would not satisfy the *Sixth Amendment* to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine…whether he is guilty beyond a reasonable doubt." *Id.*

Criminal fraud is prohibited under Chapter 32 of the Penal Code and it is based not on a general definition allowing negligence, but a series of specific definitions requiring criminal conduct. *See* Tex. Penal Code 32.32 (West 2015). In fact, the definition of "fraud" used in the indictment sets a threshold that is too low. See section above explain the low civil threshold employed.

The indictment, on its face, is not a criminal fraud charge. Counsel filed a exception to the indictment asking for dismissal of the count one charge on the basis that it did not constitute an offense and that motion was denied. 1CR150. The indictment, in count one alleges that the "defendant committed fraud in connection with the sale of said security" following the statutory citation to the misrepresentation portion of the statute, not the fraud portion, and preceding a

lengthy eleven paragraphs long rendition of "misstatement" allegations. 1CR5-7. These 11 separate paragraphs assert various failures to disclose facts and making misrepresentations that variously described the nondisclosures as a "material fact" and "relevant facts." Nowhere does count one explain what the "fraud" is that constitutes an offense.

Chapter 32 of the Penal Code sets out all criminal "fraud" offenses under Texas law. None of those offenses are charged in count one or in the 11 paragraphs following count one. The closest any of the chapter 32 fraud offenses come to conduct charged in the indictment is with respect to section 32.32 of the Penal Code, which sets out an offense for intentionally or knowingly making a material or misleading "written" statement to obtain property or credit. Nowhere in the indictment in count one is it alleged that the Appellant made a written material or misleading statement to obtain credit. The title to the security statute containing the "fraud" provision explains that these provisions should be "penal" in nature.

Reference is, therefore, made to the Texas Penal Code to define fraud. If this were not the case, "fraud" would be defined in the securities laws as mere negligence in 581-4(F) and is unconstitutional as explained above. Since the statute says it is a penal provision, the Penal Code defines criminal "fraud" in the securities provisions and none of those fraud offenses are applicable or even charged here.

21

Because the Securities law is unconstitutional the conviction on count one must be reversed and rendered.

**Point of Error Number Four: The court erred by denying Appellant's motion to dismiss count one (securities laws) because the statute of limitations had expired on this offense. 1CR7, 6R109, 3CR674, 6R120, 3CR801, 11R 36.**

**Point of Error Number Five: The court erred by denying Appellant's motion to dismiss and count two (theft) because the statute of limitations had expired on this offense. 1CR7, 6RR109, 3CR 674, 6R120, 3CR801, 11R 36.**

These points of error will be argued together.

The State must plead and prove any tolling provision to the statute of limitations. Here, the State did neither. *Cooper v. State*, 527 S.W.2d 563 (Tex. Crim. App. 1975)[statements at a pretrial motion hearing will not prove tolling which is the State's obligation in a securities case]. This Court reviews whether the statute of limitations for an offense has expired prior to the charge under a *de novo* standard of review. *Provident Life & Assc. Ins. Co. v. Knot*, 128 S.W.3d 211, 215 (Tex. 2003).

The indictment charged the violation of the securities laws (count one) and theft (count two) occurring on "the 7th Day of November 2008." 1CR5-7. However, proof in the case showed that the company agreement forming Nafta Holdings, LLC is dated November 3, 2008. Therefore, the offenses of securities fraud/misstatement and theft were completed on November 3, 2008. The statute of limitations for these two offenses runs five years after the date of completion of the offense. Five years after November 3, 2008 is November 3, 2013. The indictment

22

in this case was brought on November 6, 2013, at 11:20 a.m. 1CR7. Counsel filed a motion for writ of habeas corpus asking for the indictment to be dismissed on this basis (6R109), which writ was denied. 3CR674, 6R120. Appellant requested that the court give a limiting instruction to the jury, informing them that if certain actions were outside the statute of limitations, it could not consider it as part of the offense. 8R170. Counsel also submitted a motion for a directed verdict and for a finding of the statute of limitations bar, which was denied. 3CR801, 11R36.

## Fraud/Misstatements

To satisfy the statute of limitations, an indictment for securities fraud must be brought within five years of the crime. Section 581-29-1, Vernon's Annotated Civil Statutes. The limitations period beings to run when the crime is complete. *Digges v. State,* 2012 Tex. App. Lexis 5195 (Tex. App.-Dallas 2012, no pet.), *cert. denied,* 133 S.Ct. 2801 (2013). Garrido on cross-examination does not dispute that the investment contract was signed on November 3, 2008. 9R51. In *Taylor v. State,* 450 S.W.3d 528, 538 (Tex. Crim. App. 2014) the court explained that when a contract is involved, the offense is completed when the defendant forms the intent to take the money at the time the contract is entered. Under the circumstances of a contract, deprivation of property is not criminal conduct. It is a fact intrinsic to the existence of a contract. So the offense is complete when the defendant enters into the contract with the intent to commit fraud or theft.

23

Appellant was indicted on November 6, 2013, (1CR7) three days after the statute of limitations expired. All of the alleged securities and alleged misstatements involved in the sale of the purported securities were made on or before November 3rd, 2008. Therefore, the prosecution's indictment is time-barred by the statute of limitations. Garrido testified that all of the statements that induced his investment were made in August, September, and October of 2008. 9R51-52

## SALE OF SECURITY

The Texas Securities Act, Art. 581-4(E), defines "sale" as follows: the terms "sale" or "offer for sale" or "sell" shall include every disposition, **or attempt to dispose of a security for value.** The term "sale" means and includes contract and agreements whereby securities are sold, traded or exchanged for money, property or other things of value, or any transfer **or agreement to transfer**, in trust or otherwise. *State v. PUC of Tex.*, 344 S.W.3d 349, 359. A "security" is defined, in part, as: "any share, stock, treasury stock, stock certificate, under a voting trust agreement, collateral trust certificate, equipment trust certificate, pre-organization certificate or receipt, subscription or reorganization certificate, note bond, debenture, mortgage certificate **or other evidence of indebtedness**…." Tex. Rev. Civ. State. Ann. Art. 581-4(A). "Evidence of indebtedness" means "some writing that indicates a **contractual obligation to pay in the future** for consideration

24

presently received." *Thomas v. State*. 65 S.W.3d 38, 45 (Tex. Crim. App. 2001). So when Villarreal offered the interest in the contract to Garrido, and he agreed, the alleged offense conduct was complete.

Ms. Good agrees, "fraud has to be a connection with the sale *or someone offering* you a particular investment." 6R29 [emphasis added]. Garrido on cross-examination does not dispute that the contract was signed on November 3rd 2008, (9R51), which would constitute the offer for sale. Therefore, the Nafta Holdings, LLC agreement signed on November 3rd contractually obligated Mr. Garrido to pay the monies on or about November 7th. Once he was contractually obligated, the statute of limitation of five years on any false misstatements commenced. Garrido agreed that he was obligated to pay the monies to invest in Nafta Holdings, LLC by November 3, 2008 when he signed the agreement. The alleged offense conduct was completed on that date and the Indictment is untimely.

**THEFT**

A theft occurs when (1) property is (2) unlawfully appropriated (3) by someone (4) with intent to deprive the owner of that property. Tex. Penal Code Ann. § 31.03. The statute of limitation for felony theft is five years. Code Crim. Proc. Ann. Art. 12.01(4)(A) (Vernon 2015). The Texas Penal Code allows multiple thefts committed pursuant to one scheme or continuing course of conduct – at different times and against different victims – to aggregate within one offense for

purpose of the offense grade. TEX. PENAL CODE ANN. § 31.09. Aggregation under section 31.09 creates a single offense for jurisdiction, punishment, and statute of limitation purposes. *Graves v. State*, 795 S.W.2d 185, 187 (Tex. Crim. App. 1990). Each individual theft becomes an element of the aggregate theft offense. *State v. Weaver,* 982 S.W.2d 892, 893 (Tex. Crim. App. 1998). The limitation period for aggregate theft begins to run after the last theft is completed. *Tita v. State*, 267 S.W.3d 33, 35 n.1 (Tex. Crim. App. 2008).

A theft is complete when all the elements have occurred. *Barnes v. State*, 824 S.W.2d 560, 562 (Tex. Crim. App. 1991). Theft is not a continuing offense – it does not continue as long as the actors retain control of the stolen property. *Barnes,* 824 S.W.2d at 562; *see also Cupit v. State*, 122 S.W.3d 243, 246 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) Moreover, "[t]heft by exercising control is committed and the statute of limitations commences once possession of the property becomes unlawful." *Barnes*, 824 S.W.2d at 562-63.

On November 3, 2008, Nafta Holdings, LLC formed an investment contract. 6R32-33. The evidence presented shows that the investment contract was signed and formed on November 3, 2008. 7R89. The State's theory was that Mr. Villarreal was in financial straights before that investment, had a home foreclosed on the next day after the contract was signed, and had the motive and intent to steal Mr. Garrido's investment before the contract was signed.

26

Therefore, the statute of limitations began to run when Appellant exercised control over the property, not the actual acquisition of the monies. Theft, under the penal code, is the unlawful "appropriation" of money. See Section 3.03 of the Texas Penal Code. "Appropriate" means: to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or to acquire or otherwise exercise control over property other than real property." See Section 31.01(4), Texas Penal Code. When Mr. Villarreal obtained the nonpossessory interest in Mr. Garrido's $1million upon the signing of the insurance company contract, the alleged offense conduct was completed. *Taylor v. State,* 450 S.W.3d 528, 538 (Tex. Crim. App. 2014).

The statute of limitations for theft 31.03(e)(7), began to run on November 3, 2008, meaning it expired on November 3, 2013. Appellant was indicted on November 6, 2013, at 11:20 a.m., outside the statute of limitations. 1CR7.

The State does not dispute the date of the unlawful appropriation but characterizes other acts as an element of theft after November 6, 2008. 6R115. The State argues that Appellant's subsequent misrepresentation – made well within the statute of limitations – completed the theft. A theft occurs when (1) property is (2) unlawfully **appropriated** (3) by someone (4) with intent to deprive the owner of that property. Tex. Penal Code Ann. § 31.03. The State argues that Appellant continued to make misrepresentations regarding the investment funds. Those

27

alleged misrepresentations did not create a new theft offense because no additional property was transferred or induced by any alleged representations that Mr. Garrido testified induced him to make the investment. A theft occurs when each element of the alleged offense is complete. Any subsequent misrepresentations, possession or conduct does not extend the alleged theft. It is not a continuing offense. *Taylor v. State,* 450 S.W.3d 528, 538 (Tex. Crim. App. 2014).

In *Barnes v. State,* 824 S.W.2d 560, 563 (Tex.Crim. App. 1991), a county building superintendent was convicted of theft by a public servant for keeping a lawn mover that he was supposed to trade in. The court of appeals reversed the judgment and entered a judgement of acquittal. The court held that theft by exercising control was committed, and the statute of limitations commenced, "once possession of the property becomes unlawful." *Id.* at 563. Villarreal obtained a non-possessory interest in the property on November 3, 2008, when the Nafta Holdings, LLC contract was signed. 7R89. Therefore, the statute of limitations began to run when Villarreal exercised control over the property.

In *Taylor v. State*, 450 S.W.3d 528, 537 (Tex. Crim. App, 2014), the court held a claim of theft made in connection with a contract…requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property. In that circumstance, the State must prove that the appropriation was a result of the false pretext, or fraud. Moreover, the evidence must show that the

28

accused intended to deprive the owner of the property at the time. The court emphasized, the deprivation of property cannot occur prior to the formation of the requisite intent. *Higginbotham v. State,* 356 S.W.3d 548, 588 (Tex. App,. – Texarkana 2011, pet. ref'd).

The inducement for the contract took place in August, September and October of 2008, before November 3, 2008; when Garrido testified that all conversations that he had with Villarreal lead up to the agreement. 9R51-52. The statute of limitations began to run on November 3, 2008, when Appellant and Garrido entered into the investment contract.

Since the statute of limitations expired before the indictment was brought for counts one and two, these convictions must be reversed and rendered.

**Point of Error Number Six: The Evidence is Insufficient to Sustain a Conviction on Count One,** *passim***. 1CR7.** *Jackson v. Virginia***, 443 U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979)**

**Point of Error Number Seven: The Evidence is Insufficient to Sustain a Conviction on Count Two,** *passim. Jackson v. Virginia***, 443 U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979)**
These points of error will be argued together.

**The State Failed to Prove Theft of "U.S. Currency" as Alleged in Count Two of the Indictment.**

Count two of the indictment alleges that Villarreal acquired and unlawfully appropriated $200,000.00 or more in "U.S. Currency". 1CR7 "Currency" is defined in the Texas Finance Code as the "coin and paper money of the United

States." Tex. Fin. Code Ann. § 151.501. Appellant testified at trial that Garrido never gave him any money in cash or coins. 12R94. Garrido made his initial $1million payment in the form of two checks, one on November 6, 2008 for $650,000 and the other on November 7, 2008 for $350,000. 3CR422, 423. The evidence is insufficient to show theft of "U.S. Currency" because the money was deposited by check.

In *Jackson v. State*, an appellant made a challenge to the sufficiency of the evidence by arguing that the evidence only showed theft of a check, not theft of cash as charged in the indictment. *Jackson v. State*, 646 S.W.2d 225, 226 (Tex. Crim. App. 1983). The court found this unpersuasive, holding that the check was simply the instrumentality through which appellant received the cash. Id. *Jackson* can be distinguished here, because Nafta Holdings, LLC was the party to whom the check was made out and the party that ultimately received the money. 3CR422, 423. Appellant had access to the money as the owner of Nafta Holdings, LLC, but Garrido also had access in his role as Business Administrator and account signatory. Therefore, Appellant did not receive the cash in the manner contemplated in *Jackson*. 3CR283. Also, *Jackson* concerned an indictment that charged theft of cash, whereas here the indictment alleges theft of "U.S. Currency". *Jackson v. State*, 646 S.W.2d 225, 226 (Tex. Crim. App. 1983); 1CR7. The difference is that U.S. Currency cannot be construed to include checks, while

checks, as in *Jackson*, can be construed to mean instrumentalities through which one receives cash.

The Texas Court of Criminal Appeals has previously discussed definitions of the terms defining the instrument through which money is appropriated, by looking at the common parlance of the word. *See Stanfield v. State*, 213 S.W.2d 837, 837 (1948) (interpreting the common parlance of the word "money" to mean "money of the United States"). "Currency" is defined as an "item (such as a coin, government note, or banknote) that circulates as a medium of exchange." *Currency*, Black's Law Dictionary (10th Ed. 2014). "Check," however, is defined as a "draft, other than a document draft, signed by the drawer, payable on demand, drawn on a bank, and unconditionally negotiable." *Check*, Black's Law Dictionary (10th Ed. 2014). Because the definition of currency requires an item that circulates as a medium of exchange, a check cannot be considered an item of currency. The definition of "Cash" includes "negotiable checks," but this indictment alleges theft of "U.S. Currency," not cash. *Cash*, Black's Law Dictionary (10th Ed. 2014).

**The State Failed to Prove that Appellant Appropriated U.S. Currency Without the Effective Consent of the Owner.**

Count Two of the indictment alleges that Appellant **appropriated**, "by acquiring or otherwise exercising control over," U.S. currency "without the effective consent of the owner, namely, by deception, and with intent to deprive

31

the owner of the property". 1CR7 The allegation that Appellant did not have the effective consent of Garrido is left without any support. In fact, the evidence presented strongly supports Garrido's consent to Appellant's operations of the company. Appellant and Garrido were both signatories on the Nafta Holdings, LLC account. 3CR282, 283. Garrido was an authorized signer with access to the money and he willingly deposited his money into the Nafta Holdings, LLC Wells Fargo account. Garrido understood that the expenses incurred by Appellant in trying to get the insurance company off the ground would be reimbursed to Appellant through the $1million investment. 12R51, 53. The contract for Nafta Holdings, LLC, to which Appellant and Garrido agreed on November 3, 2008, gives Appellant, as Manager, the "sole and exclusive control of the management, business and affairs of the Company, and the Manager shall make all decisions and take all actions for the Company not otherwise provided for in this Agreement, including, without limitation . . . entering into, making, and performing contracts, agreements, and **other undertakings** binding the Company that may be necessary, appropriate, or advisable in furtherance of the purposes of the Company and making all decisions and waivers thereunder" [emphasis added]. 3CR691 The Company Agreement also gives the Manager the ability, "to the extent that funds of the Company are available therefor, [to pay] debts and obligations of the Company". 3CR691. Even when First National Bank would not release

32

Appellant's money in the CD Appellant had opened with them, Garrido expressed his support and even told Appellant, "sue them, beat the hell out of them, and I'm with you partner." 12R182. The evidence presented is therefore insufficient to support the allegation in Count Two that Appellant did not have the effective consent of Garrido.

In fact, the evidence strongly supports that Garrido knew what Appellant was doing with the money. The fact that the contract included language that the Manager shall have "sole and exclusive control . . . . [of] other undertakings binding the Company" shows that Garrido intended to allow Appellant a great deal of leeway in his operations of Nafta Holdings, LLC. 3CR691. Garrido could have insisted on making a very specific list of duties of the Manager, yet the language even allows the Manager to pay "debts and obligations of the Company." 3CR691 But instead, he went further and signed express authority in a "rights of shareholders" agreement to give Appellant complete discretion to make all of Garrido's decisions as shareholder. DX 10, 15R48 ["to do all such other things within the power of a shareholder of the Corporation, including giving consents and waiving notices, if exercising such power, in his judgement, is necessary or advantageous for the interests of the Nominor."]. The fact that Appellant, as Manager, had the ability to pay the debts and obligations of Nafta Holdings LLC, at his discretion, supports Appellant's testimony that Garrido understood that

Appellant had incurred expenses in trying to get the insurance company off the ground and that Appellant would be reimbursed for those efforts. 12R51, 53. Garrido knew that the CD was encumbered by the bank and that Appellant needed money in order to form Nafta Holdings, LLC prior to making the investment and also needed to live. 9R55-56. Garrido had signatory rights over both Nafta Holdings, LLC accounts and he could get his money out by himself if he had had that desire. 9R61, 63.

**The State Failed to Prove that the Appellant Committed a Theft by Deception, and with Intent to Deprive the Owner of Property.**

There is no proof that Appellant had any intention or expectation that Nafta Holdings, LLC would not succeed or that Appellant would not fulfill his obligations as stated in the contract. In *Taylor v. State*, the Court of Criminal Appeals dealt with a similar issue and held that "[a] contractor accused of theft may not be convicted of that offense on the theory that he acquired a down payment from his customer by deception if there [was] no reason to doubt that [the contractor accused of theft] had every expectation at the time that the money changed hands of fulfilling his contractual obligations; at the time of the down payment, the customer paid voluntarily, and the accused neither intended nor knew he would not perform." *Taylor v. State*, 450 S.W. 3d 528, 536 (Tex. Crim. App. 2014). Here, Garrido paid voluntarily and Appellant neither intended nor knew he would not perform. It was Garrido's failure to follow through with his second

34

contractually obligated payment that caused the venture to flounder and the failure of the First National Bank that caused it to fail.

Further, the Court also held that "only when, at the time the money is exchanged pursuant to the contract, the accused either intends not to, or at least knows he will not, perform his part of the bargain may he be held criminally liable for theft." Id. Therefore, the deception must have happened at the time Appellant and Garrido contracted, which was on November 3, 2008. 12R94, 201. All the evidence was that Appellant, and his father before him, historically engaged in the insurance business. He further arranged to contribute his own monies to the joint venture and disclosed their encumbrance to Garrido. There is nothing in the evidence showing that Appellant intended not to perform under the contract. When asked by counsel what he was told by Appellant regarding the potential success of Nafta Holdings, LLC, Garrido said, "He told me that it was going to be a great business of great gain." 8R173. Appellant's representations to Garrido do not lead to the conclusion that Appellant will not perform or knew he would not perform, but rather constitute the type of representation made by any person before a financial investment. Also, Appellant's statements did not give Garrido any expectation of certain or guaranteed financial gains or goals. This the sort of puffery recognized as non-criminal in nature. *See Prudential Ins. Co. of Amer. v.*

*Jefferson Assoc. Ltd.,* 896 S.W.2d 156, 162 (Tex. 1995)[mere puffing or opinion does not constitute fraud].

Garrido also answered affirmatively to whether Appellant seemed wealthy to Garrido and testified that he "considered [Appellant] a businessman" and "never thought he was a fraudulent person, a man who steals." Id. Under the theft statute, "Deception" means to "[create] or [confirm] by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." Tex. Penal Code Ann. § 31.01. If the deception allegedly committed by Appellant on Garrido was that he represented himself as a wealthy and successful businessman, then Appellant would need to be unsuccessful and not wealthy in order for his representations to fall under the definition of "Deception". However, Appellant is a successful and wealthy businessman, as evidenced by the fact that he had a net worth of $3.2 million. 12R78. There is no statutory definition of "successful businessman" and representing oneself as a successful businessman does not constitute a deception under § 31.01. *See Prudential, supra.*

**The State Failed to Disprove Exceptions in the Texas Security Act.**

This Court determines whether evidence is sufficient by reviewing it in the light most favorable to the verdict to determine whether a rational juror could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443

U.S. 307, S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Also, the rational juror is not permitted to draw conclusions based upon speculation. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). Speculation may not seem entirely unreasonable, "but it is not sufficiently based on facts or evidence to support a conviction beyond reasonable doubt." *Gross v. State*, 380 S.W.3d 181, 188 (Tex. Crim. App. 2012). Villarreal moved for a directed verdict at the close of this case. 11R24.

Although it is the burden of the Appellant to raise an exception to the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. art. 581-37, if raised, "the burden shift[s] to the State to disprove such defense beyond a reasonable doubt." *Dean v. State*, 433 S.W.2d 173, 178 (Tex. Crim. App. 1968). Appellant raised the two statutory exemptions provided in article 581-5(C) of the Texas Revised Civil Statutes in his Motion for Exception to the Indictment. 1CR150–153. The exemptions provided in article 581-5(C) apply (1) when a vendor, in an isolated transaction, sells an investment of its personal holdings or the vender's registered agent sells the investment, and (2) when an insurance company regulated by the Texas Department of Insurance sells a security owned by the company and the sale is not made or intended to benefit any other company. Tex. Rev. Civ. Stat. Ann. art. 581-5(C) (West Supp. 2014).[3]

_____

[3] Article 581-5(C) of the Texas Revised Civil Statutes states that this Act does not apply to:

Facts supporting the applicability of these exemptions appear on the face of indictment. Paragraph four states that Appellant committed fraud in connection with the sale of a security, a membership interest in Nafta Holdings, LLC, by, "[i]ntentionally failing to disclose that the assets of Nafta Holdings, LCC were pledged 100% to First National Bank, as of the 10th day of June, 2008 . . . ." 1CR6. This paragraph raises that Appellant, in an isolated transaction, sold an investment of his personal holdings to First National Bank, thereby placing this action within the statutory exemption under article 581-5(C)(1). Because Appellant argued for the applicability of this exempt transaction, the burden is on the State to disprove this defense beyond a reasonable doubt. *Dean*, 433 S.W.2d at 178. The State failed to do so. The State was unable to demonstrate that Appellant was in the business of selling securities or that he was involved in "repeated and successive transactions of a like character." Tex. Rev. Civ. Stat. Ann. art. 581-5(C)(1) (West Supp. 2014). Nor does the State provide any evidence to suggest

---

(1) Sales of securities made by or in behalf of a vendor, whether by dealer or other agent, in the ordinary course of bona fide personal investment of the personal holdings of such vendor, or change in such investment, if such vendor is not engaged in the business of selling securities and the sale or sales are isolated transactions not made in the course of repeated and successive transactions of a like character; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended by the vendor or his agent, for the benefit, either directly or indirectly, of any company or corporation except the individual vendor (other than a usual commission to said agent), and provided further, that any person acting as agent for said vendor shall be registered pursuant to this Act; (2) Sales by or on behalf of any insurance company subject to the supervision or control of the Texas Department of Insurance of any security owned by such company as a legal and bona fide investment, provided that in no event shall any such sale or offering be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any other company as that term is defined in this Act.

that this sale was intended to benefit any other company or corporation other than Nafta Holdings, LLC. *Id.* The State therefore failed to provide sufficient evidence to disprove this exempt transaction defense beyond a reasonable doubt. *Dean*, 433 S.W.2d at 178.

Similarly, the indictment raises the second statutory exemption provided in article 581-5(C)(2) of the Texas Revised Civil Statutes. The indictment states that Appellant did "sell and offer for sale a membership interest in Nafta Holdings, LLC, said membership interested being a security," to Garrido. 1CR5. Raul Villanueva, a former employee for First National Bank, served as a loan officer for Appellant's companies. 8R59–60. Raul Villanueva identified Nafta Holdings, LLC as an insurance related company Appellant was involved with at First National Bank. 8R61–62. As Villarreal testified, "Nafta Holdings was going to be the owner of Nafta Insurance Company." 12R64. Villarreal acquired a $2.3 million loan to start an insurance company and this loan was given to Nafta Holdings, LLC directly. 12R78–79. In starting this company, Appellant testified that an application for an insurance company would need to be submitted to the Texas Department of Insurance and, in forming this company, he sought to acquire $2 million in working capital required by the Texas Department of Insurance. 12R176–77. Thus, Nafta Holdings, LLC was an insurance company subject to the supervision or control of the Texas Department of

Insurance. Appellant sold a membership interest in Nafta Holdings, LLC and there are no facts to suggest that this sale was made for the benefit of any other company. As a result, the evidence presented raised the affirmative defense provided in article 581-8(C)(2) and the state was thus required to disprove this defense beyond a reasonable doubt." *Dean v. State*, 433 S.W.2d 173, 178 (Tex. Crim. App. 1968). Because the State did not disprove these two exemptions the evidence was insufficient to convict.

**Point of error number eight: The state failed to plead and disprove the exception to the sale of a security contained in the criminal provision of the securities act, so count one failed to state an offense.1CR5-7, 1CR150-154, 5R46, 7R15.** *State v. Laird*, **208 S.W.3d 667 (Tex. App.—Fort Worth 2006, no. pet.)**

Appellant raised the applicability of the insurance related contract provision in the Securities Act via pretrial motion. 1CR150-154. He argued that the act did not apply to this contract, by its own terms. The court denied his motion. 7R15

Article 581-4 (A) defines the term "security." The face of the indictment asserts in its title that "false statements securities 581-29 (C) (3)" is charged. Further, the opening paragraph of the indictment states that the "Defendant committed fraud in connection with the sale of the security". 1 CR5.

The definition of a security expressly excludes any contract or agreement in

relation to and in consequence of any insurance contract.[4] The Penal Code requires that such exceptions must be plead in the indictment and negated by the State by proof beyond a reasonable doubt. *See* V.T.C.A § 2.02 (West 2015). The statute under which Appellant was indicted is found in Vernon's Texas Civil Statutes, not the Texas Penal Code. *See* TEX. CIV. STAT. CODE ANN. art. 581-29 (West 2015). Article 581-29 is titled Penal Provisions. *See id.* However, this does not excuse the state from negating the exemption and proving it beyond a reasonable doubt. In *State v. Laird*, 208 S.W.3d 667 (Tex. App.—Fort Worth 2006, no. pet.), the defendant was indicted for violating the state clean air act by burning "domestic waste", which is found in the Texas Water Code Annotated, along with any exceptions to the definition of "domestic waste." *See State v. Laird*, 208 S.W.3d 667, 670–71 (Tex. App.—Fort Worth 2006, no. pet.) (showing the definition and exceptions are found in Texas Water Code Annotated). Nevertheless, the court found the indictment "the state must negate the existence of any exception to an offense in the charging instrument… and the negation of an exception to the offense is an element of the offense." *See id.* at 671. The court was not troubled by the fact the definition or exceptions were found outside of the

---

[4] "Provided, however, that this definition shall not apply to any insurance policy, endowment policy, annuity contract, optional annuity contract, or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract has been duly filed with the department is now or hereinafter required by law." *See* TEX. CIV. STAT. CODE ANN. art. 581-4 (A) (West 2015).

Texas Penal Code. *See id.* at 671, n. 5 (2006) (finding "[e]ven though the offense of outdoor burning is found in the water code, not the penal code, the penal code's negation-of-exceptions requirement applies to offenses defined by other laws as well.")

Count one of the indictment fails to state an offense because it does not plead that an exception to the securities law is negated. The state is obligated by the Vernon's Texas Penal Code to prove beyond a reasonable doubt that any exception contained in the law does not apply. *See id.* Under Vernon's Texas Civil Statutes section 581-4 the security law provides that it does not apply to any "insurance policy, endowment policy, annuity contract, optional annuity contract, or any contractor agreement in relation to any consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract has been fully filed with the Department is now or hereinafter required by law." *See* TEX. CIV. STAT. CODE ANN. art. 581-4 (A) (West 2015). Therefore, the conviction in count one is void.

**Point of error number nine: The Denial of Villarreal's Request for the Inclusion of the Statutory Exemption in the Jury Instruction Constitutes Reversible Error 13R21 *Dean v. State,* 443 S.W.2d 173 (Tex. Crim. App. 1968).**

The defense of exempt transactions was raised by the evidence, "whether such evidence be produced by the State or the defense, and whether it be strong or

feeble, unimpeached, or contradicted, it is reversible error for the court to fail to submit an affirmative instruction thereon if proper special requested charge or objection has been made by the defense." *Dean*, 433 S.W.2d at 178. Villarreal objected to the jury charge by requesting "for the definitions of exemptions from the acts for insurance sale." 13R21. Although Villarreal did not request the inclusion of the exemption for a vendor under article 581-5(C)(1) in the jury charge, he did previously request that the State address both of the exempt transactions listed under article 581-5(C) of the Texas Revised Civil Statutes in the Motion for Exception to the Indictment. 1CR150. Despite this request, the trial court ruled against Villarreal and denied the motion for exception to the indictment. 7R15. The trial court's prior denial of the inclusion of this statutory exemption would have made the subsequent request for the vendor exemption frivolous. Villarreal, therefore, was not required to repeatedly ask for the inclusion of this defense. Because the court declined to include these defenses in the instruction provided to the jury, the court committed a reversible error. *Dean*, 433 S.W.2d at 178.

**Point of error number ten: A Material Variance Exists Between the Allegations in Count two of the Indictment and the Proof Presented at Trial.** *Passim Gollihar v. State*, **46 S.W.3d 243, 246 (Tex. Crim. App. 2001).**

**Point of error number eleven: A Material Variance Exists Between the Allegations in Count one of the Indictment and the Proof Presented at Trial.** *Passim Gollihar v. State*, **46 S.W.3d 243, 246 (Tex. Crim. App. 2001).**

A variation exists between the offense alleged in Count Two of the indictment, theft of U.S. Currency, and the evidence produced at trial, that Garrido wrote checks to Nafta Holdings, LLC. 1CR7. This variance is fatal and thus violates Appellant's 5th Amendment right to due process. A variance occurs if there is a discrepancy between the allegation in the indictment and the proof presented at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). A variance is material and will require reversal only if it "prejudices the defendant's 'substantial rights,' either by surprising the defendant at trial or by placing him at risk of double jeopardy." *United States v. Baker*, 17 F.3d 94, 98 (5th Cir. 1994). Due process is implicated in that the indictment failed to sufficiently inform Appellant of the charge against him to allow him to prepare an adequate defense at trial. *Gollihar v. State*, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001) (*citing U.S. v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). Appellant found himself in a situation where the charge against him alleged that he appropriated U.S. Currency, meaning cash or coins, but the proof presented at trial was that he appropriated checks. Appellant was therefore left at trial to defend himself from a charge not specified in the indictment, which is exactly the sort of surprise contemplated in *Baker*. Thus, the variation between the proof presented at trial and the allegation in the indictment was material, rendering the variance fatal and requiring reversal.

In Count One of the indictment, there is a material variance between the allegations in the indictment, False Statement Securities in violation of Art. 581-29(C)(3), and the proof presented at trial, Fraud or Fraudulent practices in violation of Art. 581-29(C)(1). 1CR7. Here, the variance prejudices Appellant's substantial rights and placed him at risk of double jeopardy. Under Article 581-4, "fraud" is defined as "misrepresentations, in any manner, of a relevant fact; any promise or representation or predication as to the future not made honestly and in good faith, or an intentional failure to disclose a material fact." Vernon's Ann.Texas Civ.St. Art. 581-4. In Art. 581-29(C)(3), an offense is to "knowingly make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." Vernon's Ann.Texas Civ.St. Art. 581-29(C)(3). The difference between Art. 581-29(C)(1) and (C)(3) is that the untrue statements must be, under the circumstances under which they are made, not misleading. However, the indictment does not include such language and simply identifies the alleged misrepresentation and follows it with "said information being a material fact." 1CR7. Due Process is again implicated because Appellant has not been given notice through the indictment in order to prepare an adequate defense at trial. *Gollihar v. State*, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001) (*citing U.S. v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). The indictment gave Appellant the

45

impression that the charged offense was that of "False Statement Securities" yet the proof presented at trial was merely fraud. Therefore, Appellant was surprised in the manner delineated in *Baker*. *United States v. Baker*, 17 F.3d 94, 98 (5th Cir. 1994). Similarly, Appellant is subjected to the risk of double jeopardy because an entirely different statutory offense has been proven at trial than the one alleged in the indictment, so Appellant could expect to be brought back to court over the same transaction. In regards to Count One of the indictment, the variance is material and thus requires reversal.

**Point of Error Number Twelve: The Prosecution Became an Interested Party when it Gave Advice to the Victim in his Civil Suit,** *passim*. **4R15.** *Young v. U.S. ex rel. Vuitton et Fils S.A.*, **481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).**

Initially, Mr. Garrido was going to appear as a defense witness. 1CR22 He was represented by Mr. Paul Fourt. 1CR26 Further, Mr. Garrido had a civil suit against Appellant. Id. Counsel announced to the court that they felt that if the civil case resolved, that the criminal case would not need to go forward. 2R10-11, 3R7 Attorney Angela Cole, with the Texas State Securities Board as an Assistant Director, began communicating with Mr. Garrido as a complaining witness in the case. 1CR36 Thereafter, the state attempted to take the deposition of Mr. Garrido 1CR44-46, 4R 5-6 Mr. Fourt appeared in court indicating he represented Mr. Garrido in his civil case. 3R7-8, 4R6 He stated that his client did not want to proceed with prosecution of this case. But that when he met with prosecutors at the

DAs office, in an attempt to prepare an affidavit of non-prosecution based on his settlement of the civil case, the district attorney rejected that. 4R14 Mr. Fourt also objected to the fact that the district attorney met with his client out of his presence based on their representation they would not discuss the civil case with his client. However, they did discuss the civil case with his client and even advised the client on the merits of him accepting the settlement in that civil case. 4R15, 3R3  After that Mr. Fourt lost communications with his client and was given orders by Mr. Garrido through an email to nonsuit the civil case. 5R39  Mr. Garrido represented that he was scared into believing that any civil settlement would never be paid in his only venue to resolve this matter was a criminal case. 5R39  But, his lawyer, Mr. Fourt never gave him that advice. That advice must have come from his meeting with Ms. Allen and Miss Cole, the assistant district attorney and the Securities Board lawyer. 5R40  These prosecutors stepped over the line as disinterested prosecutors and became advocates and legal representatives of Mr. Garrido. Id Counsel objected that this conflict prohibited the lawyers from pursuing the prosecution of the case. Id  The state denied that it provided Mr. Garrido civil advice.  However, it never denied speaking to him about his civil case. 5R41  And, in response to defense counsel's representation they were in possession of texts and emails from Mr. Garrido contradicting that representation, 5R43,  the state's only objection was that Mr. Fourt was no longer Mr. Garrido's

attorney. 5R43 Defense counsel noted that the state would not be aware of this information had it not been discussing Mr. Garrido's suit and its disposition with him. 5R44

> "Your honor let me just add one thing. How she knows or if she knows or how she found out that Mr. Fourt is no longer the attorney I don't know. There's been no filings made of any kind or any representation other than the phone call that I received from Mr. for the Mr. Forrest no longer the attorney. I was advised by him that he got an email that he was told to nonsuit the lawsuit. However, when that discussion took place prior to the nonsuit, and it's not a coincidence that this nonsuit issue came up after we were already seeking his deposition in the civil case, which was actually I think set for today we would've been taking his deposition. So obviously they're intertwined Somebody advised him that he could not get out of the civil case deposition unless you were to nonsuit the lawsuit, and I'm certain that Mr. Fourt was not doing that because he was actually prosecuting the civil case to try and get a resolution on the matter." 5R44

At trial, the prosecution became an interested party when it represented and gave advice to Garrido regarding his civil suit and, therefore, deprived Appellant of his right to a disinterested prosecution. The Supreme Court has previously established a "categorical rule against the appointment of an interested prosecutor." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814, 107 S.Ct. 2124, 2141, 95 L.Ed.2d 740 (1987). The Court's justification in establishing such a rule was that "[i]t is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself

may be at stake in such matters." Id at 810. While it is true that prosecutors "are necessarily permitted to be zealous in their enforcement of the law," *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248, 100 S.Ct. 1610, 1616, 64 L.Ed.2d 182 (1980), the measures taken by the prosecution in the instant case clearly rise above the level of acceptable zealousness and pass into the realm of prosecutorial misconduct. It is important to remember, "the prosecutor's client is not the victim but the people who live in the prosecutor's jurisdiction." ABA STANDARDS FOR CRIMINAL JUSTICE: FOR THE PROSECUTION FUNCTION, STANDARD 3-3.1 (2015). Representing and giving advice to a victim in a related civil matter and barring the plaintiff's civil attorney from sitting in on the meeting is essentially becoming a private, interested prosecutor who is also representing plaintiff in a civil action. The Fourth Circuit has handled a similar situation and responded that "use of private prosecutors who are also representing plaintiffs in civil actions against the criminal defendant should be discouraged." *Jones v. Richards*, 776 F.2d 1244, 1247 (4th Cir. 1985).

**Point of Error number Thirteen: The court erred in permitting the Texas Securities Board to act as both prosecutors and witnesses in this case. 10R323. *In Re Guerra*, 235 S.W.3d 392, 431.**


A prosecutor's "primary duty" is "not to convict, but see that justice is done." In this regard, any interest that is inconsistent with the prosecutor's duty to see that justice is done is a conflict that could potentially violate a defendant's right

49

to fundamental fairness. "Moreover, a conflict arising from a prosecutor's non-economic, personal interest in the case can violate a defendant's right to due process." *In Re Guerra*, 235 S.W.3d 392, 431 (Tex. Crim. App. 2007, overruled on other grounds).

Appellant argues that Angela Cole should have been disqualified because Ms. Cole was biased and has a conflict of interest, and was a witness to one of the concerns raised by Mr. Stapleton regarding Mr. Garrido. The absence of an impartial and disinterested prosecutor has been held to violate a criminal defendant's due process right to a fundamentally fair trial. *Ganger v. Peyton*, 379 F.2d 709, 714 (4th Cir. 1967). In other words, the due process rights of a criminal defendant are violated when a prosecuting attorney who has a conflict of interest relevant to defendant's case prosecutes the defendant. Ms. Cole stated on the record that the Texas Securities Board had assigned her to this case a couple of years ago. 4R16. Appellant objected that the witness from the Texas Securities Board should not have been able to testify because lawyers from the same office were prosecuting the case, citing the Bridwell case. 10R4  But then the court and Stapleton discuss the fact the TSB lawyers are prosecuting. In error, the Judge says that they are representing the Cameron County DA's office. But on the record and when they speak, they say they are representing the Texas Security Board. 10R31. Appellant objected that they remain employees of the agency. He said it

would be like him becoming a special prosecutor then asking his partner to testify in the case. 10R32 Stapleton asked that Ms. Lujan's testimony be stricken as a remedy to the separation of powers problem and the court denied that request at 10R30 Ms Lujan works for the same Securities Board that Ms. Good and Ms. Cole work for. 9R148 The Appellant complained that the same office investigated, prosecuted and acted as witnesses in the case. 10R4-5. Ms Cole or another lawyer from her office testified before the grand jury, her office investigated and chose to charge Villarreal, lawyers in her office were named as expert witnesses, she testified at a pretrial hearing and her colleague, Ms. Lujan, testified at trial in front of the jury. Because Appellant was deprived of a disinterested prosecution, his convictions must be reversed and he should be granted a new trial.

**Point of error number Fourteen: The Court should have stricken Garrido's testimony and granted a mistrial when the state failed to produce his video taped statement that had been in their possession. 2R6, 4R49.** *Jenkins v. State*, **912 S.W.2d 793 (Tex. Crim. App. 1993)**

The trial court denied Mr. Villareal's due process of law and the right to confront the witness against him under Article I, Sections 10 and 19, of the Texas Constitution, by refusing to order the State to produce a prior-statement of Mr. Garrido.

Texas Rule of Evidence 615 (e) provides that when the party who calls a witness does not produce his prior statement "that is in their possession and that relates to the subject matter of the witness's testimony," the witness's testimony

51

must be stricken from the record. TEX. R. EVID. 615(a) & (e). In addition if it's an attorney for the state that disobeys the order, the court must declare a mistrial. In *Jenkins v. State*, 912 S.W.2d 793 (Tex. Crim. App. 1993), the court held the "plain language" of 614(a), re-codified as 615, "requires a prosecutor to produce witness statements that are in the prosecutor's possession." *Id.* at 819.

Here, the district attorney's office met with Mr. Garrido in its office and videotaped his interview. 2R6, 4R49. Thereafter, the district attorney lost the prior statement. *Id*. Counsel objected stating that they were entitled to the spoliation presumption. 4R49, 5R33 That is, that the destroyed statement which was in the states control to produce must be presumed favorable to the defense. The interview was filmed in the district attorney's office. The district attorney's office possessed the prior statement from Mr. Garrido. Instead, the state made an oral motion in limine to prohibit the defendants from even mentioning the lost recording of Garrido. 7R16 The Court erred in permitting the Garrido testimony to stand. Appellant's convictions should be reversed and he should be granted a new trial.

**Points of Error Fifteen through Eighteen:**

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the due process clause of the 5th and 14th amendments to the United States Constitution. 11 R1 75.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the due course of law provisions of article 1, sections 13 and 19 to the Texas Constitution. 11 R175.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the fair trial clause of the 6th amendment to the United States Constitution. 11 R1 75.

The court's comment on the State's evidence as having proved its case was the equivalent of directing a verdict in favor of the state and was therefore calculated to cause egregious harm to the appellant requiring reversal under the fair trial clause of article 1 section 10 to the Texas Constitution. 11 R1 75.

These 4 points of error will be argued together below.

The court commented on the weight of the evidence in front of the jury in a manner that caused egregious harm because it amounted to the equivalent of a directed verdict of guilt. During the cross-examination of the Appellant's character witness, Ms. Davila, the Appellant objected to a question concerning whether she had learned he used investor funds for personal expenses because it was not an accepted and proven fact; it was a matter for the trial jury to decide in the very trial before it. However, the Court overruled the objection, finding that that was the testimony so far; thus commenting on the weight of the evidence.

Q. (By Ms. Cole) Have you heard that the Defendant has used investor funds for personal expenses?

MR. STAPLETON: And we'll object to that. **That's not been proved yet. That's what this whole trial is about.**

53

THE COURT: **It's what the testimony is so far. I'll overrule the objection.**
MR. STAPLETON: Yes, Your Honor.
Q. (By Ms. Cole) Have you heard that the Defendant has used investor funds that were supposed to go into a company for his own personal expenses without  telling that investor?
A. No, ma'am. " 11R175

The comment of the court, in effect, told the jurors that the case had been proven by the state against the Appellant.  In light of the fact that the evidence was insufficient for a myriad of reasons as stated in the sufficiency, variance, and statute of limitations points of error in this brief, the harm caused by the court's comment was egregious in light of all of the other evidence.

The state proved that Mr. Garrido and Villarreal reached a contractual agreement to form an insurance company together on November 3 of 2008. The binding contract obligated Mr. Garrido to pay $2 million in two payments. He made the first payment into an account over which he had signatory authority along with Mr. Villareal. 9R63 & 97-98 He testified that he could have obtained his money from this account at any time. In exchange for this money, he obtained 24% interest in the company. Thereafter he was to make another $1 million payment, which he failed to do. Because Mr. Garrido failed to make this additional payment, the deal could not go forward as planned. 9R56-57 He attempted to renegotiate the deal to obtain full management authority over the monies through his son-in-law. 9R72-76 It was not until three months later that those monies were

transferred to other accounts. The First National Bank was where most of these funds went and Mr. Garrido had signatory authority over this account as well. 9R155. In fact, his own personal financial advisor, Tomas Esteve, also worked at First National Bank. 10R97 The testimony was that Mr. Garrido directed expenditures (9R157) and had signed and express agreement for Mr. Villarrael to exercise all control and make all decisions for all stockholders in the company. See defense Exhibit 10, 15R47.

Ms. Lujan, who examined the financials tracing the flow of Mr. Garrido's $1 million, reached no conclusion regarding whether any of the expenditures or transfers constituted the illegal or unlawful transfer of funds or was done without Mr. Garrido's understanding. 9R162-163

Mr. Garrido agreed that he asked Mr. Villarreal to provide his girlfriend monies and had him finance his trips to Mexico for medicine, among other things. To just one driver, Mr. Garrido had transferred over $156,000. And he agreed he signed the agreement for Mr. Villarreal to manage the money.

Furthermore, both the theft by deception offense and material misstatement to sell a security offense have a five year statute of limitations that expired three days before the indictment was brought in this case. The state's theory was that this was theft by deception and the sale of a security by misstatements. Mr. Garrido's testimony is that all representations upon which he relied to conduct this

contractual agreement had concluded in October 2008. 9R52 The contractual agreement was entered into on November 3, 2008, more than five years before the date of the indictment. 1CR 5-7 And the state's proof varied from the indictment in a number of ways. Not the least of these, was the fact that the indictment charged violation of article 581-29 (C)(3), material misstatements and the sale of the security, and the state kept alleging article 581-29 (C) (1), fraud in the sale of a security violation. Further, the state charged theft of United States currency in its theft count, Count 2, but instead prove the transmission of a cashier's check and a regular check. See points of error concerning sufficiency of the evidence, variance and the statute of limitations above. The facts in these points of error are hereby incorporated by reference as if fully set out below.

Because the proof in support of these 2 counts in the indictment was so slight, the court's comment caused egregious error. It was the equivalent of instructing the jury that the state had met its burden of proof of showing that, under either theory (theft or misrepresentations in the sale of security), Mr. Villarreal had taken investor funds and diverted *them* to his own personal use. The courts comment on the weight of the evidence was in essence an instructed verdict of guilt. *Cf. McGinnis v. State,* 541 S.W.2d 431, 432 (Tex. App.-San Antonio 1976, no pet.). Therefore, it was the type of comment that was calculated to convey to the jury his opinion of the case. See *Clark v. State,* 878 S.W. 2d 224, 226 (Tex-

Dallas 1994, no pet.). Due process and the Appellant's trial by jury rights require a neutral judge who has not commented on the weight of the evidence to the jury. Where, as here, the comments cause probable prejudice to appellant, and egregious harm, the case must be reversed. To prevail on this point the state must prove that the courts error made no contribution to the conviction because it established harm of a constitutional dimension. *See id.*

In *Bartlett v. Sta*te, 270 S.W.3d 147, 154 (Tex. Crim. App. 2008) the trial court gave a neutral instruction regarding the failure of the defendant to take a breath test. The Court of Criminal Appeals overturned the conviction because the court has singled out particular evidence to the jury for none of the permissible purposes. The three permissible purposes only include where the law prescribes the weight that must be assigned to testimony (as with accomplice witness testimony), when the jury is permitted to conclude one fact from the proof of another (such as in deadly conduct when pointing a weapon at another allows the jury to conclude reckless conduct), or when the jury may not reach a conclusion about the evidence without first reaching a predicate conclusion (such as compliance with article 38.23). None of these three permissible reasons were present here. Even though the instruction was neutral in *Bartlett,* the Court of Criminal Appeals reversed the conviction.

Under the due process clause defendants are entitled to a trial by neutral and detached judge. The judge who is commented on the weight of the evidence is not such a judge. See *Johnson v. State,* 452 S.W.3d 398, 405 (Tex. App. -- Amarillo 2014, pet. ref'd.). And where the comment influences the jury to reach a conclusion about guilt, especially in weak case like this one, the Appellant is deprived of a fair and impartial jury.

> "The [Supreme] Court has disapproved the use of mandatory conclusive presumptions not merely because it conflicts with the overriding presumption of innocence with which the law endows the accused, but also because it invades the fact finding function which in a criminal case the law assigns solely to the jury. The constitutional right to a jury trial embodies a profound judgment about the way in which law should be enforced and justice administered. It is a structural guarantee that reflects a fundamental decision about the exercise of official power -- a reluctance to entrust plenary powers over life and liberty of the citizens to one judge or group of judges. A defendant may assuredly insist upon observance of this guarantee even when the evidence is so overwhelming as to establish guilt beyond a reasonable doubt. That is why the Court has found it constitutionally impermissible for a judge to direct a verdict for the State." *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 2421-22, 105 L.Ed.2d 218 (1989) (citations omitted) (Scalia ▾, J., concurring)

See also *Selman v. State,* 807 S. W.2d 310, 313 (Tex. Crim. App. 1991).

Because the comment on the weight of the evidence deprived Appellant of a fair trial by an impartial jury and judge, and he was caused egregious harm thereby, his conviction should be reversed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellant prays that his conviction and sentence be reversed and he should either be granted a new trial or his judgment should be rendered and for any further relief to which he may be entitled to at law or in equity.

Respectfully submitted,

By: _/s/_____
    Cynthia E. Orr

Gerald H. Goldstein (Lead Counsel)
Bar No. 08101000
Cynthia E. Orr
Bar No. 15313350
Goldstein, Goldstein & Hilley
310 S. St. Mary's St., Ste. 2900
San Antonio, Texas  78205
E-mail: ggandh@aol.com
E-mail: whitecollarlaw@gmail.com
210-226-1463
210-226-8367 facsimile

Edward Stapleton
Bar No. 19058400
Attorney at Law
2401 Wild Flower, Suite C
Brownsville, Texas  78526
956-544-0882
956-504-0814 facsimile

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document does comply with the word-count limitations of Tex. R. App. P. 9.4(i) because it contains 14,833 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

By:  */s/*_____
Cynthia E. Orr

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellant's Brief has been electronically transmitted to District Attorney Luis Saenz *via* e-mail: district.attorney@co.cameron.tx.us as a registered participant of the e-File Texas, filing system, on this the 16day of September, 2015.

By:  _*/s/*_____
Cynthia E. Orr